We'll hear the next case on the calendar, Haar v. Nationwide Mutual Fire Insurance. May it please the Court, good morning, Your Honors. Gregory Zimmer for the plaintiff appellant, Dr. Robert Haar. I assume the court's familiar generally with the case, so just by a very brief way of background, Dr. Haar commenced this action in the New York State Supreme Court, New York County, alleging a private cause of action under section 23011B of the New York Public Health Law, which prohibits bad faith reporting to the office. No, it doesn't actually. What it does is it provides a privilege for good faith reporting, right? That's what it actually says. Well, the first department has found that there's a cause of action for bad faith reporting to the OPMC. And when this case was filed, and still today, in the New York State Supreme Court, New York County- What about the second department? Well, the second court later did decide the opposite. There's a split in the departments in New York State. However- It sounds like we should certify this to the New York Court of Appeals and see if they would like to answer the question. Well, Your Honor, a district court in the southern district has had its own view on that. I don't necessarily- With all due respect to the southern district, we happen to be just a little bit of- Well, of course. Have some ability to review their- I don't necessarily disagree, but- The district court doesn't have the ability to certify, we do. Well, I don't necessarily disagree, but I will say that if you do, we'll certainly argue that there should be a private right of action under the statute as the first department- Well, I'd like to hear that argument, because we're having trouble understanding it, in the sense that the New York Court of Appeals has said, in the case of McBarnett against Sobel, that the legislative history of this statute shows that it's in a different context, not addressing this private right of action issue at all, but has said that the purpose of this statute as a whole was to encourage reports with respect to allegations of misconduct by doctors and to free people who might make such complaints from the threat of civil litigation. And of course, that threat existed because there are causes of action, right, such as defamation, that would have been available and that are available to your client. And the purpose, it seems, of this piece of the statute is as a shield against those causes of action. Now, of course, if it's bad faith, the shield falls, and then there are common law causes of action which would apply. So I'm having a little trouble understanding what is the theory by which this statute not only removes a shield in the event of bad faith, but creates a new and separate cause of action in cases where, for whatever reason, I'm not sure which, maybe statute of limitations, in this case, defamation and other causes of action don't apply. Well, Your Honor, I would respectfully disagree with your reading of McBarnett, because McBarnett specifically recognizes that there's a two-fold purpose of the overall statutory scheme. One small aspect, the way that these things are initiated, is to provide some level of protection for people who report allegations of professional misconduct. But on the other hand, McBarnett also recognizes that one of the purposes of the statute is to protect the physicians who are accused of misconduct. McBarnett dealt with the confidentiality provision, which the Lesesne case, which is the district court case, which found there is no cause of action, relied heavily on as well. And there it found that in certain circumstances, not particularly relevant here, but I would argue are analogous, even the confidentiality provisions that protect reporters must fall away if it's necessary to protect the interests of the doctor who's accused. Well, that was in a case where the doctor already knew the identity of the complainants because they testified against him. And the question was whether the specific contents of the complaints should be disclosed to permit cross-examination of those people. That's a pretty far cry from what we're talking about here. Well, again, I would respectfully take a different position. Here, Dr. Hart knows the identity of the reporters. In fact, Nationwide itself has submitted a copy of its own report. Right, but this is not about disclosing the contents of the reports, which are not really an issue here. The question is whether there is liability created by this statute, new liability for a new cause of action that did not exist before. And I'm having trouble understanding what the rationale of that is and why I should think. Because after all, and I think I'm correct about this, but you can correct me if I'm wrong, that under the Erie Doctrine, we are supposed to, if we can, predict what the New York Court of Appeals would do. And if we can predict it, we should proceed to decide the case. Well, I think that your job here, if you're going to interpret New York law, is to try to anticipate what the Court of Appeals would do. And I think that McBarnett shows that when confronted with a situation where a doctor is seeking protection of the statute, they clearly find that doctors are among the class of people who are intended to benefit from the statute. The rest of the decision, I don't think, speaks to whether or not this particular cause of action should be implied. There are two other factors, which we go through in the brief that I'm happy to discuss, which I think also weigh in favor of creating this cause of action. But at least with respect to 23011A of the statute, McBarnett was clear that the purpose was to encourage complaints. Well, I think- I'm quoting, encourage complaints. That's the legislative purpose. Well, it was intended to, well, one of the legislative purposes of the section, which has many sections. So clearly, the sections on the procedure with respect to hearings against doctors is not to encourage reporting. You need to look at the overall statutory scheme. It'll- But yes, but you also need to, if there is a specific purpose to the particular section that we're talking about, that would seem to be the most relevant. Of course, saying the doctor gets a hearing is entirely to protect the doctor and have a fair procedure with respect to processing these complaints. But the purpose of, we're talking about what is the purpose of this section? In fairness, we've taken an overall view of the statute. And it's clear that there are protections for doctors and there are protections for reporters. But the very section that provides the protection for certain reports provides protection only for good faith reports. And for the Lesesny Court and for any other court to determine that that section evidences an intent to encourage or to protect bad faith reports, we don't think is the case. Well, but it doesn't protect bad faith reports. On its face, it does not protect bad faith reports. You're asking for something more. You're asking for the creation of a new statutory cause of action for bad faith reporting that goes beyond whatever pre-existing civil liability there may be for common law claims such as defamation. Am I right about that? You are correct. And that implicates all three prongs of the analysis. But with respect to the first prong of the analysis, to me, it's a little bit of a myopic or actually a misguided interpretation of section 23011B to say that its intent is to protect all reports. Its intent is to protect good faith reports. And the corollary to that is that bad faith reports are not protected. Who's impacted by bad faith reports? It's the physicians against whom those reports are made. So in my opinion, even viewing just section 23011B, you're looking at a section that embodies the entire statutory balance that's struck. Between yes, we want to hear about misconduct by professionals. If there's a reasonable basis for it, if it's done in good faith. But we have limited resources and we are required to investigate every report that's submitted. So therefore, there are limitations on what we want to hear. No one would suggest, I don't think, although it's arguably implied in Nationwide's papers, that it was to just willy-nilly require or encourage reporting of anything. And when you have a sufficient- There's actually an obligation to report though, isn't there? Well, there- What's the insurer between a rock and a hard place in deciding what to report? It really doesn't, your honor. The only obligation to report, which is not part of this particular statutory scheme, by the way, which is what the analysis should be, is not a requirement to report bad faith or non-existent problems. Nationwide is not a very sympathetic plaintiff here in that regard. It's a very sophisticated insurance company. These are no-fault claims. The court can probably take judicial notice that no-fault insurers are not in the habit of paying claims that should not be paid or that they may avoid payment on. They have all kinds of verification and other procedures in place if they believe there's a problem. And while we don't suggest, as Nationwide claims, that there's an investigation requirement, these claims were paid with verification in only one case, which did not imply any kind of misconduct. So- Aren't there other avenues for somebody to pursue other than under this statute? Are there tort claim actions, defamation actions? Well, your honor, there are, but I don't think that's relevant here. Because the question before the court is whether there's an additional or a separate- So my question is, could you have pursued other avenues, or did you pursue other avenues? Well, we could have, we actually did pursue alongside of this claim, but- You pursued a defamation claim. Correct, but plaintiffs are not limited to a single claim or cause of action. And again, in the first department, I just want to make clear, there were two valid causes of action. They were alleged, and if this case were not removed, which is absolutely Nationwide's right to do, we would be litigating this case. The first department, right now, is allowing these claims, and they're going forward. Am I correct, and correct me if I'm wrong, that you didn't argue that the statute of limitations was told until August 2016 when you found out about the, when you say you found out about the- On the defamation claim, we did withdraw that claim, Your Honor. We learned of the date of the report through the motion to dismiss. We alleged it based on when Dr. Haar received notice of the claims. And when we learned, and assumed that they're honestly, they're not submitting forged documents or submitting false testimony, in good faith, we withdrew that claim. So, if Your Honor's like, I'll go through the additional factors that we've done in our brief, or I can hold that for rebuttal. I have three minutes in rebuttal, so.  Thank you, Your Honors. Good morning, Your Honors. May it please the court, I'm Ralph Carter, here for Defendant Appley, Nationwide Mutual Fire Insurance Company. Can I just ask you a question about process? Yes, Chief Judge. It seems that it took several years for this case to be investigated and for report. Am I, do I have the, could you give me the timeline? I may be misunderstanding. Well, in Dr. Haar's complaint, he alleged upon information belief that Nationwide reported in bad faith to the OPMC, the Office of Professional Medical Conduct, in or about July 2016, in connection with our motion to dismiss on many bases, on both the claims, the defamation claim and the implied private right of action claim. We submitted a declaration from Nationwide's investigator from its special investigations unit, which said, no, in fact, here's a redacted version. And the year of that? And the year of that was, in the month and year of that was October 2012. And when did he find out about the investigations, the outcome of the investigation? Well, I don't know that Mr. Balzan heard about the outcome of the investigation until the complaint was filed, until we were retained in this case and were told that there was a complaint filed in connection with the . . . When did Dr. Haar find out, is my question. Well, according to the complaint, he was contacted by the Office of Professional Medical . . . What's your understanding? I mean, you've seen the complaint, but you've looked into it. What's your understanding? I don't have any independent understanding of when the OPMC contacted him, other than what he alleged in the complaint, which was in August of 2016. So that, we don't have any information, or Nationwide doesn't have any information as to what occurred during the intervening three years, or some odd three years and nine months. However . . . In your experience, is that a standard amount of time? Well, according to . . . Is it too long? Is it an excessive amount of time? Well, this is, I must admit, the first case I've dealt with, which involves someone alleging a violation of 23011B. And I don't have any independent knowledge of how long these complaints take to resolve, other than the information that this court can take judicial notice of, which is published by the Office of Professional Medical Conduct in accordance with 23014. We cite in our appellee's brief, the 2015 report, which goes through the regulatory scheme. The OPMC is required to report under sub 14 as to how many complaints come in, how many complaints are dealt with at the initial vetting stage, where the OPMC determines that they are not, they don't warrant further investigation. I believe in 2017, it was somewhere in the neighborhood of 43% of the remaining complaints, which about 10,000 a year come in now. The OPMC then refers the rest of those to its internal staff, doctors and laypersons to assess whether or not there is enough there in order to warrant proceeding to referring the matter to a board investigation committee. And then- I understand how this process works. Am I right that your client filed a complaint or a report with the agency? Is there anything, is your client then pursuing something like a cause of action, or do they just send the complaint in and then it's up to the agency to do whatever they want with it? It is the latter, your honor. Really what we're required to do is to notify under the insurance law, under insurance law 5108C and regulation 83, within 30 days of any apparent improper conduct in connection with the submission of claims. So you filed such a report- We filed such, right. Although it's, I suppose, I don't know what, to what extent we're allowed to consider that at this stage of the proceedings. But there's an affidavit from your side suggesting that that was done in 2012. And then the record doesn't tell us anything that you're aware of as to what the agency did in the interim, when Dr. Haar was notified that there was a complaint, or what further investigations pursued until such time as you get sued. Exactly. Okay. That is the information we have. In essence, we have a case where Dr. Haar is suing upon information and belief because he can't really, he can infer or he can sort of surmise what Nationwide may have said in October 2012. But he can't know what it said because the contents of the report are confidential. What he knows is what he received from a notice of charge and statement of hearing, which he admitted in opposition to the motion to dismiss that was issued in this case, would suggest that the OPMC felt that there was something there that warranted further scrutiny. May have been based on your complaint solely, or may have been based on some investigation that they thereafter independently did. And in any event, whatever they did and however strong their feelings may have been at the beginning, at the end of the day, Dr. Haar is exonerated. Is that the way this plays out? No disciplinary sanctions were levied against him as far as the complaint alleges. I don't have any information otherwise. I have a question and this relates to what Judge Hall brought up with your adversary. So if all we had was the decision of the second department of the appellate division, the Al-Khuli case. We could, with some, we might be able to say, based on that decision, if we thought it was correct, that we have confidence, we have some strong confidence, as to what the New York Court of Appeals would do if we thought, if we agreed with the reasoning of the second department. And certainly I found Judge Nathan's opinion compelling. But in this case, we have a decision of the first department, which is not, arguably not dicta, which goes the other way. And as a matter of procedure, where there is a split between departments, isn't the more respectful course, rather than to say we know how the New York Court of Appeals would rule. When there is this split among departments, isn't the more respectful course simply to certify and they can tell us in rather short order what the answer is? Well, that's certainly within this court's discretion to determine whether or not it's necessary. I believe that the court has a sufficient authority here. And while the court should weigh and look at both the phone decision from the first department in 2003, and weigh that alongside the Al-Khuli decision, I would argue that the Al-Khuli decision provides additional analysis of the requisite she-he factors that you just don't see in the phone decision. It's almost, with all deference to the first department, as though the initial analysis that's performed in phone relates to the separate section of the public health law. And then as an afterthought, it says, by the way, as well, that applies to 23011B too. Whereas in the Al-Khuli decision, the court separately analyzes the two separate provisions of the public health law. And it says as to the first, yes, applying the she-he factors, medical health providers are within the class of persons with respect to 4406D. But that just doesn't hold with respect to 23011B. It's a defense, not an implied private right of action. So in our view, that decision, as well as the decision relied upon by Judge Nathan, the Court of Claims decision in 2005 and fine, all those data points suggest that this court has sufficient information and sufficient authority in order to predict how the Court of Appeals would rule. You know- If there's no private right of action for bad faith reporting under section 230, what are the other avenues, if any, that do physicians have who might be the victims of bad faith or malicious reporting? Well, here, Dr. Haar pled a defamation claim. But I think partially as a product of the confidentiality provision of 11A, he made a claim upon information belief that didn't hold true as to when nationwide reported In another circumstance, someone could file a timely claim, a common law tort claim, and as the legislature intended, 23011B would provide a defense to that, to the extent that the reporting was in good faith and without malice. It would be, perhaps, the more respectful course to send it to the Court of Appeals. It would also be the more expensive course for the litigants on both sides. Would it not? I mean, we'd be talking about another round of briefing in Albany, possibly an oral, probably an oral argument there, followed by a decision of the court, which, depending on exactly what it said, would entail at least a return visit here by letters, even if the ruling were very clear one way or the other. That is correct, Your Honor. There would be some level of expense and effort that would be incurred by the parties here on what we believe is an issue that this court is well able to handle without the need, based on the record of what Judge Kaplan held here, basically adopting Lisesni and El-Khallouli. All these courts had the benefit of Fung, and they've all decided that the better reading of 23011B is that it is a defense. Unless the court has anything further on that point, I would reserve some time for an alternative argument. Also, I just did want to mention one point, also, that- You didn't reserve any further time. Well, I'm sorry. Did we go over? Oh, we did actually go over. If I may, if the court would permit me to, or would like for me to address the alternative argument that we've submitted in support of affirmance on the Norr-Pennington Doctrine. We have your argument. Thank you. Your Honors, first, as to the issue of certification, I certainly respect this court, and I believe that you are perfectly capable of interpreting this statute. But that interpretation should be an independent interpretation. With respect to cost, Dr. Hart's under no illusions that suing nationwide was going to be an inexpensive proposition. They're going to go through any length they can to avoid liability, and probably to avoid a finding that they are bound to make only good faith reports to OPMC, and we accept that. But what I would say is you need to independently evaluate the factors, and I'm sure you will. And I'd like to speak to the prior- Also, I mean, we're engaged in basically, if we decide ourselves, making a prediction as to what the New York Court of Appeals would do. Correct, and so the prior cases all spring from the Sesney decision, which at its base relies on the confidentiality provisions to find that a private cause of action would be inconsistent with the statutory scheme. But your honors have an insight into how the Court of Appeals views the confidentiality provision. It has said expressly that it must yield to a doctor's right to defend himself at a hearing. So certainly it's not the be all and end all of the statute. It's one aspect of the statute, and that same decision makes it clear that the first box is checked for Dr. Hart. He is among the class of people intended to be protected and served by this statute. So we've briefed the other sections, but I would just say that with respect to the Foon decision, I've argued in front of the first department many times, and that court does not sparsely analyze the outcomes of its cases. It doesn't tend to write the same lengthy decisions that your honors do. And I would also say that in that there is an analysis of another statute that comes to the same conclusion in there. They clearly did an analysis. So the fact that the first department doesn't always articulate it's pretty sparse. It's sparsely drafted, but as you know, it's a panel of- The court did its work, and no one's suggesting it didn't. The question is, what can we draw from it if they don't explain it? How can we, if we've got one court that lays out a very persuasive analysis and another court that doesn't actually say anything that is very germane to our decision. What weight do we give to that opinion, and how can we give weight? Well, frankly, when you're trying to anticipate what the court of appeals would decide, I don't think it matters. Clearly a very prestigious appellate panel who takes their job very seriously, in the context of a decision where they articulate an analysis of the factors, has found that this statute does provide a private right of action. We've argued in our brief why that should be the case under the three factors. You asked a question about alternative remedies. The question with respect to whether there's an implied right of action, and there may be 100 causes of action, but each plaintiff is entitled to assert all 100 of them, and have each one of them taken seriously by the court. And the question with respect to an implied right of action is whether there's an analogous but more limited remedy in the statute that would indicate some legislative intent not to create. Because you don't necessarily need to find a legislative intent to create a cause of action. What you need to determine is whether the purposes of the statute will be furthered. And in this case, there's nothing that even comes close to a remedy here. And the cases that they've cited for that proposition even further underscore that. Because there, there were the identical remedies given to other people or with different standards. For example, in one of the cases, there was a remedy for willful misconduct, and they wanted to bring a claim for something less than that akin to negligence. They said, no, they decided willful was the standard. In another, you were able to sue the judgment creditors who did an improper job of restraining bank accounts. They wanted to sue the bank. And they said, no, they gave you a specific remedy, exactly what you're looking for, but against someone else. And in another case, they had given the remedy to virtually everyone on the planet who was injured by a minor who was served alcohol improperly under a sort of dram shop statute except the minor. And the minor was saying, no, she didn't apply that same right for me. And they said, no, it's clear from the legislative construct that they had this in mind. They considered it. They made a decision. We don't need to decide whether there should be a private right of action. The legislature's made it clear there shouldn't be. They've elected not to give that. That's not the case here. So if your honors are going to make a decision on this, then I think you need to look at this sort of de novo, which is the standard of review anyway. And while the Foon decision evidence is that a very sophisticated appellate court believes there is a cause of action, and the aliqui follows on to the sesne, and what I believe is a flawed analysis under McBarnett, which it cites but never recognizes, establishes two beneficiaries of the statute, at least two. So yes, I don't know that it's easy to predict what the court of appeals would do. My client is concerned with getting it right. He certainly doesn't want to be in a position where the second circuit is at odds with the court of appeals next year, and he was on the losing end of the bargain. He'd prefer to have this done correctly. He wants to serve his claim, vindicate his rights, and those of other doctors that are wrongly accused. And if that takes going up to the court of appeals, so be it. If your honors believe that's the best way to figure out what the court of appeals would do, then we're happy to comply with that and return here if needed. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision.